IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

SHEILA T.,                          )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )   No. 25-cv-02390-TMP
                                    )
FRANK BISIGNANO,                    )
COMMISSIONER OF SOCIAL              )
SECURITY ADMINISTRATION,            )
                                    )
    Defendant.                      )

---

### ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

---

On April 8, 2025, Sheila T. ("Plaintiff") filed a Complaint seeking judicial review of a Social Security decision.[1] (ECF No. 1.) Plaintiff seeks to appeal the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability and disability insurance benefits. (ECF No. 6-2 at PageID 29.) For the following reasons, the decision of the Commissioner is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

---

[1] After the parties consented to the jurisdiction of a United States magistrate judge on May 30, 2025, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 16.)

On May 30, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 404-434 (Id.) The application, which alleged an onset date of March 31, 2016, was denied initially as well as upon reconsideration. (Id.) Plaintiff then requested a hearing, which was held before an Administrative Law Judge ("ALJ") via telephone on October 24, 2023. (Id.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Plaintiff was not disabled for the purposes of receiving Title II benefits. (Id. at PageID 31.) The ALJ also noted Plaintiff last met the insured status requirements of the Act on March 31, 2021. (Id.) At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of March 31, 2016, and her date last insured of March 31, 2021. (Id.) At the second step, the ALJ concluded that Plaintiff had the following severe impairments: "asthma, scoliosis, degenerative disc disease, obesity, polyarthralgia, osteoarthritis, and Sjogren's syndrome (20 CFR 404.1520(c))." (Id.) The ALJ also concluded that Plaintiff had "non-severe impairments" and "medically determinable mental impairments of generalized anxiety, depression and post-traumatic stress disorder" that "did not cause more than minimal limitation in

[Plaintiff's] ability to perform basic mental work activities and were therefore nonsevere." (Id.)

At the third step, the ALJ concluded that through the date last insured, Plaintiff's impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at PageID 32.) As to Plaintiff's spine impairment, the ALJ found that

> there is no evidence of impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following set forth in 1.15D: (1) a documented medical need for a walker, bilateral canes or crutches, or a wheeled and seated mobility device involving the use of both hands, or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand, or (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

(Id. at PageID 33.) Plaintiff's osteoarthritis was found not to meet the listed impairments for the same reasons. (Id.) As to Plaintiff's asthma, she "has not required three hospitalizations due to exacerbations or complications during the relevant period." (Id.) The ALJ noted there is no listing for obesity, but that "Social Security Ruling 19-2 requires administrative law judges to

consider obesity in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity." (Id.)

Accordingly, the ALJ then had to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ concluded that Plaintiff

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can climb ramps and stairs occasionally. She can climb ladders, ropes, or scaffolds occasionally. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally work at unprotected height and around moving mechanical parts.

(Id. at PageID 34.) Pursuant to 20 C.F.R. § 404.1567(b), light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

In reaching the RFC determination, the ALJ discussed Plaintiff's testimony and the medical evidence in the record. Plaintiff alleged

> disability due to a range of physical impairments
> including osteoarthritis and Sjrogens' syndrome. Her
> conditions would have precluded light duty work due to
> difficulty with lifting and standing. She also has
> asthma. She had pain in her back, legs, and neck. It was
> hard for her to even sit at her computer. She required
> multiple breaks throughout the day to relieve her
> pain/stiffness.

(ECF No. 6-2 at PageID 34.) The ALJ concluded that Plaintiff's

"medically determinable impairments could reasonably be expected

to cause the alleged symptoms; however, [Plaintiff]'s statements

concerning intensity, persistence and limiting effects of these

symptoms were not entirely consistent with the medical evidence

and other evidence in the record for the reasons explained in this

decision." (Id.)

     As to her physical impairments, the ALJ noted that Plaintiff

"has a history of treatment prior to the alleged onset date for

lumbar scoliosis/spondylosis, knee osteoarthritis and

polyarthralgia/fibromyalgia." (Id.) The ALJ cited a 2017

evaluation that found

> [Plaintiff] had intact motor strength without deficit
> and symmetrical for bilateral deltoids, biceps, triceps,
> wrist flexors, wrist extensors and intrinsic hand
> musculature. Intact motor strength and symmetrical for
> bilateral hip flexor, quadriceps, hamstrings, tibialis,
> anterior, gastrocnemius, soleus, extensor hallucis
> longus and flexor hallucis longus muscle groups without
> deficit. The claimant had no tenderness over the
> cervical and cervicothoracic junction. The claimant had
> full range of motion of the neck without pain . . .
> Examination of the bilateral upper extremities revealed
> the claimant had diffuse tenderness at and distal to the
> arm. She was also tender over the lateral epicondyle.
> She had mild pain with tennis elbow test. Most of the

tenderness appeared to be diffuse in nature without
localization. She had no triggering, locking or other
mechanical symptoms. Examination of the back reveals she
had tenderness diffusely along her back and left greater
than right hips. On examination of the bilateral lower
extremities[,] she had some snapping to the left hip
mainly along the iliopsoas tendon. She had tenderness
over the trochanteric bursa mild in nature as well as
mild tenderness diffusely throughout the bilateral lower
extremities without mobilization . . . She has
functional range of motion of the hip, knee, ankle and
foot bilaterally without deficit.

(Id. at PageID 35 (internal citations omitted).) Between 2016 and

2018, spine imaging "revealed degenerative changes but no

significant compression[,]" and treatment records from 2017 to

January 2018 showed "improvement of her back/hip pain with epidural

injections . . . and improvement with physical therapy." (Id.)

Throughout 2019 and 2020, Plaintiff complained of knee pain;

"[h]owever, her knees were considered stable with 5/5 strength in

the lower extremities. Her gait was considered normal. [Plaintiff]

underwent a partial meniscectomy/chondroplasty on November 19,

2020. At a follow up in December 2020 the claimant exhibited

functional left knee range of motion without deficit and only mild

tenderness." (Id.) Finally, the ALJ determined that

[t]reatment records throughout 2019 and 2020 show that
[Plaintiff] generally reported that her pain symptoms
were managed. She reported improvement in her Sjogren's
with medication. She reported flares of symptoms at
times. However, even on these occasions physical exams
were grossly normal. In April 2020 the claimant reported
improvement in her pain with higher doses of medication.
At a rheumatology follow up in February 2021 the claimant
reported continued joint pain; however, her physical

exam noted full range of motion without pain in all joints.

(Id. (internal citations omitted).)

At step four, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a bookkeeper because this work "did not require the performance of work-related activities precluded by [her] residual functional capacity." (Id. at PageID 36.) The ALJ found that Plaintiff was able to perform the work with the physical and mental demands as it is generally performed. However, the ALJ also made alternative findings under step five to determine whether a successful adjustment to other work can be made based on Plaintiff's age, education, work experience, and RFC. (Id. at PageID 37.) A vocational expert testified that, based on Plaintiff's age, education, work experience, and RFC, she could perform the jobs "office helper," "ticket taker," and "mail clerk," for which there were 45,000, 33,000, and 45,000 jobs available in the national economy, respectively. (Id.) Thus, the ALJ concluded that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy, and that Plaintiff was not disabled. (Id. at PageID 38.)

On March 6, 2024, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Plaintiff's request for review. (Id. at PageID 14.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final

decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Plaintiff argues that the ALJ overlooked her diagnosis of fibromyalgia, found a functional capacity inconsistent with substantial evidence because the ALJ misstated the record, and failed to account for her mental restrictions. (ECF No. 19 at PageID 2633, 2655.)

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rollins v. Comm'r of Soc. Sec., No. 24-1180, 2025 WL 2710577, at *3 (W.D. Tenn. Sept. 23, 2025). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)); see also Moats v. Comm'r of Soc. Sec., 42 F.4th 558, 561 (6th Cir. 2022).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)); Foltz obo R.B.K.F. v. Comm'r of Soc. Sec., No. 23-3362, 2023 WL 7391701, at *3 (6th Cir. Nov. 8, 2023). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)); see also Marquitta B. v. Comm'r of Soc. Sec. Admin., No. 23-cv-1276, 2025 WL 959946, at *8 (W.D. Tenn. Mar. 31, 2025). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)); Floyd v. Comm'r of Soc. Sec., No. 23-2036, 2024 WL 3103757, at *1 (6th Cir. June 24, 2024). Instead, the Commissioner, not the court or external medical

providers, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); see also Robbins v. Comm'r of Soc. Sec., No. 24-3201, 2024 WL 4603964, at *4 (6th Cir. Oct. 29, 2024).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r

of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011); Dameon W. v. O'Malley, 24-cv-1072, 2025 WL 880255, at *5 (W.D. Tenn. Mar. 21, 2025). The initial burden is on the claimant to prove she has a disability as defined by the Act. Napier v. Comm'r of Soc. Sec., 127 F.4th 1000, 1003 (6th Cir. 2025) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Napier, 127 F.4th at 1003; Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Next, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. Id.

- 11 -

On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. If, however, the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

## C.   Fibromyalgia

Plaintiff's first argument is that the ALJ failed to consider her fibromyalgia. Some context regarding fibromyalgia illuminates the dispute. "Fibromyalgia, also called fibrositis, 'is a medical condition marked by chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 860 (6th Cir. 2011) (quoting Stedman's Medical Dictionary for the Health Professions and Nursing at 541 (5th ed. 2005)). The illness has no known cause or cure. Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 434-35 (6th Cir. 2013).

"[W]hen a claimant has a fibromyalgia diagnosis, objective medical evidence of the condition is rare." Gursky v. Colvin, No. 16-CV-2654-TMP, 2017 WL 6493149, at *9 (W.D. Tenn. Dec. 19, 2017). "Rather, fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 244 (6th Cir. 2007) (internal citations and quotations omitted). As a result, evidence of the severity of symptoms of fibromyalgia is almost entirely subjective. Minor, 513 F. App'x at 434-35. The severity of fibromyalgia symptoms can also vary significantly over time because people with fibromyalgia have good days and bad days. See Gursky, 2017 WL 6493149 at *9.

These unique features of fibromyalgia complicate the Social Security disability evaluation process. See Cooper v. Comm'r of Soc. Sec., No. 4:13-CV-11883, 2014 WL 4606010, at *15 (E.D. Mich. June 17, 2014), report and recommendation adopted, 2014 WL 4607960 (E.D. Mich. Sept. 15, 2014). Usually, examining objective medical evidence is a central part of how ALJs evaluate disability claims. See id. Since people with fibromyalgia usually have normal clinical results, objective medical evidence is "simply beside the point." Kalmbach, 409 F. App'x at 862. "[A]n ALJ errs when he or she discounts a plaintiff's complaints of fibromyalgia symptoms based on a lack of objective evidence and/or benign physical exam findings or test results." Partlow v. Comm'r of Soc. Sec., No.

- 13 -

2:18-CV-1702, 2019 WL 5257541, at *6 (S.D. Ohio Oct. 17, 2019), report and recommendation adopted, 2020 WL 247336 (S.D. Ohio Jan. 16, 2020). Likewise, an ALJ errs in rejecting a medical opinion about the severity of fibromyalgia because the objective medical evidence is normal. Kalmbach, 409 F. App'x at 862. Despite this, "a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits." Stankoski v. Astrue, 532 F. App'x 614, 619 (6th Cir. 2013). On more than one occasion, the Sixth Circuit has quoted the Seventh Circuit's important observation that while "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working ... most do not and the question is whether [the claimant in this case] is one of the minority." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996); see also Minor, 513 F. App'x at 434-35; Torres v. Comm'r of Soc. Sec., 490 F. App'x 748, 754 (6th Cir. 2012); Vance v. Comm'r of Soc. Sec., 260 Fed. App'x. 801, 806 (6th Cir. 2008).

Because of the disease's unique features, the SSA has promulgated a Social Security Ruling ("SSR") regarding fibromyalgia, SSR 12-2p. SSR 12-2p, 2012 WL 3104869, at *1; see also Cabrera v. Comm'r of Soc. Sec., No. 1:20-CV-01947-JG, 2021 WL 8015645, at *8 (N.D. Ohio Dec. 21, 2021). SSR 12-2p establishes special rules for how ALJs evaluate whether fibromyalgia is a severe impairment at Step Two. Id. at *3. The ruling also provides guidance about how to evaluate a claimant's fibromyalgia at later

steps in the disability evaluation process. Id. at *4-6. As relevant here, it instructs that ALJs should be sensitive to the reality that "the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days'" and that "[w]idespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories." Id. at *6.

The court finds that the ALJ did not take into account the unique features of fibromyalgia in evaluating Plaintiff's claim and thus ran afoul of SSR 12-2p. Indeed, SSR 12-2p is not cited anywhere in the ALJ's opinion, nor were its substantive requirements applied.[2] First, the ALJ relied extensively on Plaintiff's benign physical exam findings, including those related to motor strength and range of motion, in finding Plaintiff's subjective symptom complaints inconsistent with the record. (ECF No. 6-2 at PageID 34-35.) As discussed above, the Sixth Circuit has held that citing benign physical exam results to discount the

---

[2]The government argues that the ALJ addressed Plaintiff's fibromyalgia despite not listing it as a severe impairment. However, the court found no reference to this condition in the ALJ's opinion. There is only mention of "polyarthralgia" in the list of severe impairments, referring to pain in two or more joints, which Plaintiff argues the ALJ improperly conflates with the condition of fibromyalgia. Nonetheless, mere labeling of the symptom of polyarthralgia does not suffice under SSR 12-2p.

severity of a claimant's fibromyalgia symptoms reflects a "fundamental misunderstanding of the nature of fibromyalgia." Kalmbach, 409 F. App'x at 861.

In addition, the ALJ did not follow SSR 12-2p's instruction to be sensitive to the reality that fibromyalgia can wax or wane over time. Rather, the ALJ cited the fact that Plaintiff's medical records contained some doctor's visits in which she showed some improvement or did not complain of ongoing symptoms as evidence that Plaintiff's description of her symptom severity was not consistent with the record. (ECF No. 6-2 at PageID 34.) It is difficult to square this analysis with an appreciation of fibromyalgia's tendency to wax and wane over time, especially when the ALJ concedes that Plaintiff reports "flares of symptoms at times." (Id. at PageID 35.) "[T]he 'waxing and waning' of fibromyalgia should have been an explicit consideration in exploring any disparity between particular points in the record and [the claimant's] account." Riddle v. Comm'r of Soc. Sec., No. 17-10905, 2018 WL 822428, at *3 (E.D. Mich. Feb. 12, 2018). Finally, although he states that "[Plaintiff's] ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations[,]" the ALJ did not provide any analysis as to how he considered these limitations based on Plaintiff's pain and fatigue.(ECF No. 6-2 at PageID 37.) In most cases this would not be problematic; "Social Security regulations

- 16 -

do not require the ALJ to provide a written function-by-function analysis in his opinion unless such analysis is necessary for a reviewing court to understand the bridge between the evidence and result." Storman v. Saul, No. 19-1152-TMP, 2020 WL 3542195, at *3 (W.D. Tenn. June 30, 2020) (internal citations, quotations, and alterations omitted). However, SSR 12-2p requires ALJs to give special attention to limitations related to pain and fatigue.

The government argues harmless error at step two. (ECF No. 22 at PageID 2662.) However, an ALJ's failure to take into account the unique features of fibromyalgia in accordance with SSR 12-2p is not harmless. An error by an ALJ is not harmless if "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture[.]" Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 524 (6th Cir. 2014) (internal citations and quotations omitted); see also Rabbers v. Comm'r Soc. Sec. Admin., 582 F.3d 647, 654 (6th Cir. 2009) (remand for a legal error is appropriate "if the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."). It is difficult to say whether the ALJ's ultimate conclusion would have been the same in this case without the mistaken conclusions described above. Thus, the court reverses and remands for failure to apply SSR 12-2p.

Because the court reverses and remands based on Plaintiff's SSR 12-2p argument, it does not reach her arguments regarding the ALJ's evaluations of her functional capacity and mental restrictions.

### III. CONCLUSION

For the reasons described above, the decision of the Commissioner is REVERSED AND REMANDED.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

January 12, 2026
Date